# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PETER ENGER, KAREN CHAMBERLAIN, COURTNEY CREATER, GREGORY MCGEE, and FINN EBELECHUKWU, individually and on behalf of all others similarly situated, ) ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| ) | No. 14-cv-02117 |
| v. ) ) | Judge Andrea R. Wood |
| CHICAGO CARRIAGE CAB CO., YELLOW CAB AFFILIATION, INC., FLASH CAB CO., DISPATCH TAXI AFFILIATION, INC., SIMON GARBER, MICHAEL LEVINE, HENRY ELIZAR, SAVAS TSITIRIDIS, and EVEGNY FRIEDMAN, ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

In this putative class action, current and former Chicago taxi drivers have sued the taxi cab services for which they have worked, as well as a number of individuals who own those services. The plaintiffs claim that these defendants violated the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115 *et seq.*, by improperly classifying them as independent contractors, failing to pay them the minimum wage or overtime pay, improperly charging them to work, and forcing them to bear their own operating expenses. In addition to the IWPCA claim, the Complaint also asserts a cause of action based on a theory of unjust enrichment. The defendants have moved to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion") (Dkt. No. 33). Because the plaintiffs have failed to

allege the existence of an agreement by which the defendants were obligated to pay them, as required to state a claim under the IWPCA, the Motion is granted.[1]

## BACKGROUND

As set forth in the Complaint, plaintiffs Peter Enger, Karen Chamberlain, Courtney Creater, Gregory McGee, and Finn Ebelechukwu (collectively, "Plaintiffs") work as taxi drivers in Chicago, Illinois. (Compl. ¶¶ 2-6, Dkt. No. 1.)[2] Plaintiffs worked for defendant cab services Chicago Carriage Cab Co., Yellow Cab Affiliation, Inc., 5 Star Flash Inc., and Dispatch Taxi Affiliation, Inc. (the "Cab Defendants") or their affiliates. (*Id.* ¶¶ 8, 10, 12, 14.) Defendants Simon Garber, Michael Levine, Henry Elizar, Savas Tsitiridis, and Evegny Friedman (the "Individual Defendants" and, collectively with the Cab Defendants, "Defendants") own various of the Cab Defendants. (*Id.* ¶¶ 8-16.)

To drive for one of the Cab Defendants, taxi drivers must pay fees, either directly to the Cab Defendants or their affiliates. (*Id.* ¶ 22.) The drivers may pay these fees on a weekly basis or a daily basis. If paid on a daily basis, the fees range from $100 to $125 or more, while weekly fees range from $500 to $800 or more. (*Id.* ¶¶ 23-24.) Taxi drivers receive no wages for their work; instead, the drivers' only source of income from their work for Defendants is what they manage to make in fares and tips. (*Id.* ¶ 25.) In addition to paying fees, drivers must also pay the expenses necessary to operate a taxi, including fuel, airport taxes, upkeep, and often insurance payments. (*Id.* ¶ 27.) As a result of this arrangement, taxi drivers in Chicago who pay companies

---

[1] Defendants Tsitiridis and Friedman filed a separate motion to dismiss, arguing that the allegations in the Complaint are insufficient to tie them to the alleged unlawful conduct. (Dkt. No. 8.) Because the Court concludes that the Plaintiffs have failed to state a claim against any of the defendants with the present Complaint, the Court denies Tsitiridis and Friedman's separate motion as moot.

[2] For the purposes of the Motion, the Court takes the allegations of the Complaint as true and draws all reasonable inferences in Plaintiffs' favor. *See, e.g., MCM Partners, Inc. v. Andrews-Bartlett & Assoc.,* 62 F.3d 967, 972 (7th Cir. 1995).

2

to drive a taxi often receive less than minimum wage from what remains of their fares and tips. For some shifts, they might even pay more in fees and expenses than they receive from fares and tips. (*Id.* ¶ 28.) In addition, the vast majority of these drivers work at least 12 hours per day, often six days per week. And even though they routinely work more than 40 hours per week, they do not receive time-and-a-half for overtime pay. (*Id.* ¶¶ 30-31.)

Although historically taxi drivers in Chicago were classified as employees, over the last ten years, Defendants all have classified their drivers as independent contractors. (*Id.* ¶ 38.) Despite this classification, Plaintiffs are subject to extensive control by Defendants. (*Id.* ¶ 36.) For example, Defendants exercise control over Plaintiffs' working conditions and can prevent Plaintiffs from working on a temporary or permanent basis. (*Id.*) Plaintiffs are not engaged in an independently established trade, occupation, profession, or business. (*Id.* ¶ 37.) Instead, they are entirely dependent upon Defendants because, without a "medallion," Plaintiffs cannot operate a taxi. (*Id.*)

Plaintiffs have filed a two-count Complaint alleging that Defendants (1) violated the IWPCA, and (2) were unjustly enriched by their misconduct. The suit is a putative class action on behalf of "all other persons who have worked as taxi drivers in Chicago, Illinois, over the last ten years for any of the defendants or their affiliates and have had to pay weekly fees or daily fees (for 12 or 24 hour shifts) in order to work as taxi drivers." (*Id.* ¶ 1.) Plaintiffs claim that they, and others similarly situated to them, are mischaracterized as independent contractors. Plaintiffs further allege that as a result of this misclassification, Defendants have not only charged Plaintiffs to work, but also have required them to pay the expenses necessary to operate a taxi and have failed to ensure that their taxi drivers earn minimum wage or overtime pay, have

protection under employment discrimination or unemployment statutes, or enjoy any other privileges, benefits, or protections of employment. (*Id.* ¶¶ 39-41.)

## DISCUSSION

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a short plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). To survive a Rule 12(b)(6) motion, this short plain statement must overcome two hurdles. First, the complaint's factual allegations must be enough to give the defendant fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, the complaint must contain sufficient allegations based on more than speculation to state a claim for relief that is plausible on its face. *Id.* This pleading standard does not necessarily require a complaint to contain "detailed factual allegations." *Id.* (citing *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The IWPCA allows for a cause of action based on wrongfully held compensation pursuant to a contract or agreement.[3] *Brown v. Club Assist Rd. Serv. U.S., Inc.*, No. 12 CV 5710, 2013 WL 5304100, at *8 (N.D. Ill. Sept. 19, 2013). "The IWPCA does not establish a substantive right to overtime pay or any other kind of wage." *Dominguez v. Micro Ctr. Sales Corp.*, No. 11 C 8202, 2012 WL 1719793, at *1 (N.D. Ill. May 15, 2012) (citing *Hall v. Sterling*

---

[3] The IWPCA "applies to all employers and employees" in the State of Illinois. 820 ILCS 115/1. Although Defendants appear to concede (at least for the sake of the Motion) that Plaintiffs are "employees" covered by the IWPCA, Plaintiffs nonetheless spend much of their response brief addressing whether they are properly considered Defendants' employees. (*See* Pls.' Opp'n at 7-9, Dkt. No. 39.) The Court notes that the IWPCA does not provide a cause of action for damages based on the mere mischaracterization of an employee as an independent contractor.

4

*Park Dist.*, Nos. 08 C 50116, 09 C 50146, 2011 WL 1748710, at *6 (N.D. Ill. May 4, 2011)). Therefore, plaintiffs suing under the IWPCA must allege that compensation is due to them under an employment "contract or agreement." *Landers-Scelfo v. Corporate Office Sys., Inc.*, 827 N.E.2d 1051, 1058 (Ill. App. Ct. 2d Dist. 2005). Illinois courts have interpreted the term "agreement" to be broader than a contract and to require only a manifestation of mutual assent. *Brown*, 2013 WL 5304100, at *8 (quoting *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 452 (7th Cir. 2012)). Accordingly, Plaintiffs do not need to plead all of the elements of a contract if they can plead facts showing mutual assent to an agreement. *Id.*

Defendants argue that Plaintiffs have failed to plead any sort of "contract or agreement" that could support their IWPCA claim. Plaintiffs respond by arguing that they have pleaded facts regarding the working arrangement between themselves and Defendants that sufficiently allege an agreement under Illinois law. According to Plaintiffs,

> in order to drive a taxi in the City of Chicago, because they do not own taxis or the required medallion licenses, they must work for taxi companies, such as the ones operated by Defendants. . . . [A]s a result, they work for Defendants pursuant to an agreement whereby their compensation derives solely from fares and tips paid by customers. Pursuant to this same agreement, Plaintiffs are required to pay fees to Defendants for the right to drive the cabs ranging from $100 to $125 per day to $500 to $800 per week. Under this agreement, Plaintiffs must also pay for business expenses necessary to operate the taxis, including fuel, airport taxes, upkeep, and insurance payments.

(Pls.' Opp'n at 11, Dkt. No. 39 (citations omitted).)

As pleaded, the Complaint adequately alleges the existence of an agreement between Plaintiffs and Defendants, as broadly defined by Illinois law. "Illinois courts have held that an employment agreement need not be a formally negotiated contract, and that parties may enter into an agreement without the formalities and accompanying legal protections of a contract." *Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655, 659 (N.D. Ill. 2012) (internal quotation marks

5

and alterations omitted). Thus, under the IWPCA, "an employment agreement can be entirely implicit" and "employers and employees can manifest their assent to conditions of employment by conduct alone." *Landers-Scelfo*, 827 N.E.2d at 1058-59. Under this standard, Plaintiffs have pleaded the existence of an employment agreement within the meaning of the IWPCA, under which Plaintiffs have agreed—by conduct, even if not by formal contract—that they will pay Defendants for the right to drive their cabs and bear all operating expenses, while accepting only fares and tips paid by customers as compensation.

But while Plaintiffs have successfully alleged an agreement with Defendants, they still fail to state a claim under the IWPCA because the agreement did not provide for the payment of any wages to Plaintiffs by Defendants. The IWPCA "does not grant any independent right to payment of wages and benefits; instead it only enforces the terms of an existing contract or agreement." *Wharton*, 912 F. Supp. 2d at 658. Here, Plaintiffs do not plead that the relevant agreement provided for payment of any sort by Defendants. Thus, their claims regarding a lack of minimum wage or overtime pay must fail under the IWPCA. *See, e.g., Dominguez*, 2012 WL 1719793, at *1 ("[T]he IWPCA mandates overtime pay or any other specific kind of wage only to the extent the parties' contract or agreement requires such pay.").

For similar reasons, Plaintiffs' allegations regarding Defendants improperly requiring them to pay fees and all operating expenses also must fail. Although the IWPCA prohibits most "deductions by employers from wages or final compensation," *see* 820 ILCS 115/9, the IWPCA defines both "wages" and "final compensation" in relation to payment "pursuant to an employment contract or agreement between the 2 parties." 820 ILCS 115/2. As previously discussed, Plaintiffs allege that the relevant agreement does not provide for any payment to them
6

from Defendants. Under the plain language of the statute, then, there can be no "deductions" that violate the IWPCA, as the relevant agreement does not provide for any payment to be made.

In an attempt to salvage their IWPCA claim, Plaintiffs argue that the term "wages" is "defined broadly in the IWPCA to include 'any compensation,' which could include the fares and tips collected by drivers from customers." (Pls.' Opp'n at 4-5, Dkt. No. 39.) But Plaintiffs fail to cite a single case arising under the IWPCA that supports their interpretation of the statute.[4] And for good reason: the plain language of the IWPCA contradicts such an interpretation. The IWPCA defines "wages" as "any compensation owed an employee *by an employer*" pursuant to an agreement between the two parties. 820 ILCS 115/2 (emphasis added). In the Complaint, Plaintiffs allege that the relevant agreement called for no payments to be made by Defendants to Plaintiffs, and that any compensation Plaintiffs obtained would be in the form of fares and tips paid by customers. (Compl. ¶ 25, Dkt. No. 1.) Thus, under the plain language of the statute, no "wages" could have been owed to Plaintiffs (the employees) by Defendants (the employers), since there was no agreement between the two that provided for Plaintiffs to be compensated by Defendants.

Plaintiffs cite a number of cases from other jurisdictions in support of their interpretation of the IWPCA. None of these cases is persuasive, however, as they do not involve statutes analogous to the IWPCA. For example, Plaintiffs cite two Massachusetts state court cases, *Awuah v. Coverall North America*, 952 N.E. 2d 890 (Mass. 2011), and *Sebago v. Tutunjian*, 85 Mass. App. Ct. 1119 (2014), in support of their argument that the fees and operating expenses

---

[4] Plaintiffs contend that *Brown*, 2013 WL 5304100, supports their theory that they can proceed with an IWPCA cause of action notwithstanding the fact that they have pleaded that Defendants did not agree to pay them. The Court disagrees. The plaintiffs in *Brown* were emergency service drivers who alleged that they were being paid directly by the defendant on a "piece basis" depending on the number of service calls that the plaintiffs provided. *Id.* at *3, 7. That is not the case here, where Plaintiffs have affirmatively pleaded that the relevant "agreement" provided for no payment by Defendants.

borne by Plaintiffs violate the IWPCA. However, both of those cases arose under provisions of the Massachusetts Wage Act, which, in contrast to the IWPCA, does not require that a cause of action proceed on the basis of an employment contract or agreement. *See* M.G.L.A. 149 § 148. Similarly, Plaintiffs cite a number of cases from various jurisdictions for the proposition that "courts have repeatedly found that exotic dancers can bring wage payment claims despite the fact that they received no base wages from their employers." (Pls.' Opp'n at 4 (collecting cases), Dkt. No. 39.) But each of the cases cited was decided on the basis of the federal Fair Labor Standards Act ("FLSA") or analogous state law statutes that provide a substantive basis for workers to obtain a minimum wage and overtime pay, in contrast with the IWPCA, which does not establish a substantive right to wages from an employer. *See DeMarco v. Nw. Mem'l Healthcare*, No. 10 C 397, 2011 WL 3510896, at *6 (N.D. Ill. Aug. 10, 2011) ("Unlike FLSA . . . IWPCA does not establish a substantive right to overtime pay. . . . IWPCA mandates overtime pay (or any other kind of wage) only to the extent the parties' contract or agreement requires such pay.").[5]

Because Plaintiffs' IWPCA claim fails, their cause of action for unjust enrichment also fails. To state a cause of action based on a theory of unjust enrichment under Illinois law, a plaintiff must allege "that the defendant has unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E. 2d 672 (Ill. 1989)). Where a claim of unjust enrichment is premised on the same improper conduct as alleged in another

---

[5] Plaintiffs' reliance on these cases from other jurisdictions belies their policy-based argument that dismissal of the IWPCA claim means "that if an employer agreed to pay an employee no wages, that employee could never file a wage claim against the employer because there would be no agreement by the employer to pay wages" (Pls.' Opp'n at 2-3, Dkt. No. 39.) Although Plaintiffs are correct that an employee in that situation could not state a cause of action under the IWPCA, he or she could still bring an action under the Illinois Minimum Wage Act or the FLSA, each of which provides workers with substantive rights to the payment of wages.

claim, then the unjust enrichment claim will "stand or fall" based on the disposition of the related cause of action. *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 516-517 (7th Cir. 2011). Because Plaintiffs' claims are based on the same alleged conduct, the unjust enrichment claim fails along with the IWPCA claim. *See, e.g., Camilotes v. Resurrection Health Care Corp.*, No. 10-cv-366, 2012 WL 2905528, at *6 (N.D. Ill. July 16, 2012).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Complaint (Dkt. No. 33) is granted. Plaintiffs' Complaint is dismissed without prejudice to refiling within 28 days, if Plaintiffs can do so consistent with the requirements of Federal Rule of Civil Procedure 11. The Motion to Dismiss Complaint as to Defendants Freidman and Tstiridis (Dkt. No. 8) is denied as moot.

ENTERED:

Dated: December 29, 2014

Andrea R. Wood
United States District Judge