

In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-1057

PETER ENGER, *et al.*,

                                              *Plaintiffs-Appellants*,

*v.*

CHICAGO CARRIAGE CAB CORP., *et al.*,

                                              *Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:14-CV-02117 — **Andrea R. Wood**, *Judge*.

_____

ARGUED DECEMBER 7, 2015 — DECIDED JANUARY 11, 2016

_____

Before FLAUM, WILLIAMS, and SYKES, *Circuit Judges*.

FLAUM, *Circuit Judge*. Plaintiff taxi drivers (collectively, "the drivers") brought a class action suit against their taxi company employers. The drivers contend that defendants violated the Illinois Wage Payment and Collection Act, 820 ILCS 115 *et seq.* ("IWPCA"), by improperly charging them to work and forcing them to bear their own operating expenses, among other things. The drivers also assert a cause of ac-

tion based on a theory of unjust enrichment. Defendants filed a motion to dismiss.

The IWPCA provides employees with a cause of action against employers for the timely and complete payment of earned wages. The Act defines "wages" narrowly—a wage is compensation owed *by the employer* pursuant to an employment agreement between the parties. *See* 820 ILCS 115/2. The district court assumed for purposes of the motion to dismiss that the drivers were employees and that the parties had entered into an employment agreement. But the court granted defendants' motion to dismiss because that employment agreement did not obligate defendants to compensate the drivers, and thus, the drivers' claims regarding improper fees could not be brought under the IWPCA. For the reasons that follow, we affirm the judgment of the district court.

## I. Background

Plaintiffs are current and former Chicago taxi drivers who worked for defendant taxi companies.[1] To drive one of defendants' taxis, the driver must pay a daily or weekly "shift fee." Essentially, shift fees are lease payments that allow the driver to operate one of defendants' taxis and earn income. If paid on a daily basis, the fees range from $100 to $125, and weekly fees range from $500 to $800 or more. A

---

[1] Plaintiffs are Peter Enger, Karen Chamberlain, Courtney Creater, Gregory McGee, and Finn Ebelechukwu. Taxi company defendants are Chicago Carriage Cab Co.; Yellow Cab Affiliation, Inc.; Flash Cab Co.; and Dispatch Taxi Affiliation, Inc. As part of this suit, plaintiffs also sued individual taxi company owners Simon Garber, Michael Levine, Henry Elizar, Savas Tsitiridis, and Evgeny Friedman.

No. 15-1057 3

driver must also pay operating expenses, which include fuel, airport taxes, upkeep, and sometimes insurance payments.

The drivers do not earn traditional wages or overtime pay—their only source of income is what they make in fares and tips from passengers. As a result, the drivers contend that they often receive less than minimum wage and for some shifts, pay more for fees and expenses than they receive from fares and tips.

On March 26, 2014, the drivers brought a putative class action on behalf of "all … persons who have worked as taxi drivers in Chicago, Illinois, over the last ten years for any of the defendants or their affiliates and have had to pay weekly fees or daily fees (for 12 or 24 hour shifts) in order to work as taxi drivers." The drivers' complaint alleged that defendants violated the IWPCA by improperly classifying them as independent contractors, failing to pay them the minimum wage or overtime pay, improperly charging them to work, and forcing them to bear their own operating expenses. The complaint also asserted a cause of action based on a theory of unjust enrichment.

Defendants filed a motion to dismiss, arguing that the drivers could not seek recovery under the IWPCA because they had not alleged the existence of an employment contract or any agreement to pay the drivers' wages. Defendants conceded for purposes of the motion to dismiss that the drivers would be considered employees under the IWPCA's broad employment relationship test.

The district court granted defendants' motion to dismiss. The court determined that the complaint adequately pled the existence of an implicit employment agreement between the

drivers and defendants, but nonetheless concluded that the drivers had failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) because that agreement did not require defendants to pay the drivers any wages, nor did it provide for overtime pay. Thus, the drivers' claims regarding a lack of a fair wage and improper fees could not be brought under the IWPCA. In addition, the district court determined that because the drivers' claim for unjust enrichment was premised on the same allegedly improper conduct as the drivers' IWPCA claims, the unjust enrichment claim failed. This appeal followed.

## II. Discussion

We review a district court's dismissal under Rule 12(b)(6) de novo, construing all facts and reasonable inferences in the light most favorable to the non-moving party. *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012). "Dismissal is proper if it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to the relief requested." *R.J.R. Servs., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989) (citation omitted).

### A. IWPCA Claims

On appeal, the drivers contend that the district court relied on an overly narrow definition of "wages" that improperly excluded tips and other forms of indirect compensation. Specifically, the drivers argue that the implied contract allowing them to collect fares and tips from passengers provides for indirect compensation from defendants, and thus, the district court improperly dismissed their IWPCA claims. The drivers also maintain that defendants violated the

No. 15-1057 5

IWPCA, which prohibits employers from taking deductions from an employee's wages unless certain conditions are met,[2] by requiring the drivers to pay shift fees and bear their own operating expenses.

The IWPCA provides employees with a cause of action against employers for the timely and complete payment of earned wages. 820 ILCS 115/3. The Act defines "wages" narrowly—a wage is "compensation owed an employee *by an employer pursuant to an employment contract or agreement* between the 2 parties … ."  820 ILCS 115/2 (emphasis added). As such, to state a claim under the IWPCA, the drivers are required to demonstrate that they are owed compensation from defendants pursuant to an employment agreement. *See, e.g.*, *Brand v. Comcast Corp.*, No. 12 CV 1122, 2013 WL 1499008, at *2 (N.D. Ill. Apr. 11, 2013) (holding that "to state a claim under the IWPCA, [plaintiff] must allege that [defendant] owed him the unpaid wages pursuant to an employment contract or agreement"); *Dominguez v. Micro Ctr. Sales Corp.*, No. 11 C 8202, 2012 WL 1719793, at *1 (N.D. Ill. May 15, 2012) ("[T]he IWPCA mandates overtime pay or any other specific kind of wage only to the extent the parties' contract or agreement requires such pay."). Like the district court, we assume that the parties' relationship is governed by an implicit employment contract.

We agree with the district court that the drivers' IWPCA claims fail because the drivers have not demonstrated that

---

[2] The employer may take deductions from wages if those deductions are: "(1) required by law; (2) to … benefit … the employee; (3) in response to a valid wage assignment or wage deduction order; [or] (4) made with the express written consent of the employee, given freely at the time the deduction is made … ."  820 ILCS 115/9.

defendants owed them "wages." It is undisputed that the parties' employment agreement did not obligate defendants to compensate the drivers—it only required defendants to make their cabs and medallions available to the drivers so that they could collect tips and fares *from passengers*. In fact, the drivers admitted in their complaint that they "receive no wages; instead, their only source of income is what they manage to make in fares and tips."

In spite of this admission, the drivers insist that we should construe "wages" as including indirect compensation.[3] To support this argument, the drivers primarily rely on cases from other state courts involving exotic dancers who successfully brought claims for unpaid wages under their state minimum wage statutes, despite the fact that they received no base wages from their employers. *E.g., Terry v. Sapphire Gentlemen's Club*, 336 P.3d 951, 953 (Nev. 2014); *In re Wage Claims of Smith v. Tyad, Inc.*, 209 P.3d 228, 233 (Mont. 2009); *State ex rel. Roberts v. Bomareto Enters., Inc.*, 956 P.2d 254, 255 (Or. Ct. App. 1998). The problem with this argument is that those state minimum wage statutes define "wages" broadly to include tips and other forms of indirect

---

[3] Defendants contend that because the drivers admit in their complaint that they do not receive wages, we should not consider this argument on appeal because it relies on "new facts." *See Flying J Inc. v. City of New Haven*, 549 F.3d 538, 542 n.1 (7th Cir. 2008) (observing that allegations in plaintiff's briefs must be consistent with the statement of facts contained in the complaint). Although the drivers' admission is telling, their argument that they earn "wages" does not rest on a different factual picture than that in the complaint. Rather, the drivers contend that we should interpret the IWPCA's definition of wages as encompassing income earned from third parties. Thus, we are not precluded from addressing the drivers' argument in this appeal.

No. 15-1057　　　　　　　　　　　　　　　　　　7

compensation and are thus distinguishable. The drivers do not cite to a single case interpreting the IWPCA as including indirect compensation in its narrow definition of "wages."

By contrast, the Illinois Minimum Wage Law, which sets the minimum hourly rate that an employee must be paid regardless of the underlying employment agreement, defines "wages" broadly to include "compensation due to an employee *by reason of his employment*, including allowances … for gratuities … ." 820 ILCS 105/3(b) (emphasis added). In other words, the legislature evidenced its ability to define "wages" so as to encompass indirect forms of compensation in a neighboring wage law. This textual difference further supports our conclusion that an employee suing under the IWPCA must seek to collect compensation owed by his employer, and not third parties. *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("[W]here [the legislature] includes particular language in one section of a statute but omits it in another …, it is generally presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)) (internal quotation marks omitted)).

Lastly, the drivers argue that even under the IWPCA's narrow definition, the district court ignored evidence that the drivers receive "wages" from defendants in the form of credit card remittances. When a passenger pays by credit card, that fare may be processed by the taxi company's credit card processing service and remitted to the driver by defendants (although some drivers use their own credit card processing services to bypass defendants altogether). But the fact that payment sometimes flows through defendants does not alter the reality that the obligation to pay the driver aris-

es from the passenger, and not the taxi company. If, for example, the passenger's credit card was declined and the passenger had no cash to pay for the fare, the taxi company would not be required to compensate the driver for the money that the passenger should have paid. In other words, the taxi company is nothing more than an intermediary, and it is inaccurate to characterize any remittance from defendants as a wage.

Because the drivers have not shown that they are entitled to wages from defendants, their argument that defendants made improper deductions from their wages by requiring them to pay fees and expenses fails as a matter of law. Defendants do not pay the drivers' wages and so they cannot be sued for taking deductions from those non-existent wages. More broadly, it is inaccurate to characterize the shift fees and other expenses that the drivers voluntarily pay to operate defendants' cabs as a deduction. Instead, the drivers' payment of fees and expenses is the consideration offered in exchange for the right to lease a cab and medallion under the parties' implicit agreement. And although the drivers agreed to pay those fees and expenses, they now attempt to use the IWPCA to rewrite the terms of their employment agreement. But again, the IWPCA provides no substantive relief beyond what the underlying employment contract requires. In other words, the IWPCA exists to hold the employer to his promise under the employment agreement; by asking the judiciary to graft new terms into an employment contract without employer's consent, the drivers turn the IWPCA on its head.[4]

---

[4] Although the drivers have failed to state a claim under the IWPCA, we note that there are arguably other avenues of redress for the allegedly

No. 15-1057 9

### B. Unjust Enrichment Claim

In their complaint, the drivers argued that under their employment arrangement with defendants, they were forced to pay substantial sums of money to work, and that defendants unjustly benefitted as a result. The district court dismissed the drivers' unjust enrichment claim because it was based on the same allegedly improper conduct as their IWPCA claims. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim.").

On appeal, the parties dispute whether unjust enrichment provides an independent cause of action under Illinois law. However, we need not resolve this issue because "[w]hen two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688–89 (7th Cir. 2004); *see also People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992). The drivers do not dispute that the parties' employment relationship is governed by an implied contract. Because the drivers' claim of unjust enrichment chal-

---

unjust terms of their employment. For example, if the drivers are unable to earn a minimum wage under the terms of their employment arrangement, they may have a cause of action under either the Illinois Minimum Wage Law or the Fair Labor Standards Act. *See* 820 ILCS 105; 29 U.S.C. § 201, *et seq*.

Case: 1:14-cv-02117 Document #: 67 Filed: 02/02/16 Page 10 of 10 PageID #:219
Case: 15-1057    Document: 00712694710    Filed: 02/02/2016    Pages: 10

10                                                                  No. 15-1057

lenges the terms of that contract, the doctrine of unjust enrichment has no application.

## III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.